IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | CASE NO. BK09-80321-TLS |
| | ) | |
| DONALD L. SIEBE and | ) | CH. 13 |
| CAROL J. SIEBE, | ) | |
| | ) | |
| Debtors. | ) | |

# **ORDER**

Hearing was held in Omaha, Nebraska, on October 13, 2009, on Debtors' Objection to Claim (Fil. #67), and a Resistance by Cornhusker Bank (Fil. #76). Gene T. Oglesby appeared for Debtors, and Susan M. Napolitano appeared for Cornhusker Bank.

As fully discussed below, the objections raised by Debtors are not persuasive. However, I find that Cornhusker Bank should have applied some of the real estate liquidation proceeds to the note at issue and by failing to do so, its claim is overstated.

*Background*

The underlying facts of this case are not in dispute. The Debtors are co-makers, along with their son and daughter-in-law, Larry and Patricia Siebe, of a promissory note dated March 21, 2002, in the original principal amount of $103,361.02. Cornhusker Bank is the holder and beneficiary of the note. The note indicates that it is secured by certain deeds of trust held by Cornhusker Bank against real property of Larry and Patricia Siebe.

Larry and Patricia Siebe were also indebted to Cornhusker Bank on two additional loans. Those other loans were not co-signed by Debtors in this case, but were at least partially secured by the same deeds of trust securing the note at issue. The deeds of trust do not distinguish the priorities of the various notes secured thereby.

Larry Siebe defaulted on the promissory notes and filed a Chapter 11 bankruptcy proceeding on October 8, 2003 (Case No. BK03-43504-TLS). His Chapter 11 plan was confirmed on June 14, 2005. Cornhusker Bank and Larry Siebe agreed to certain treatment of Cornhusker Bank's claims during the course of Larry Siebe's Chapter 11 bankruptcy. According to the agreement incorporated into the confirmed Chapter 11 plan of Larry Siebe, the bank held three[1] claims in that case:

– Claim #1, which is the note co-signed by Debtors in this case, in the amount of $99,697.36. That note is described as secured by all real estate owned by Larry Siebe.

---

[1] The bank also had a fourth claim in the amount of approximately $998.00 secured by a vehicle, but that claim is not pertinent here.

– Claim #2 in the amount of $155,643.30 secured by Larry Siebe's Lincoln, Nebraska, residence and by an office building located in Lincoln.

– Claim #3 in the amount of $106,238.96 secured by the residence property and by parcels of real estate located in Beatrice, Nebraska.

The agreement/confirmed plan further provided that Larry Siebe would retain the Lincoln residence and would sell the other parcels of real estate. If the sales did not occur within a time certain, the real estate would be surrendered to the bank for liquidation. It is important to note that the agreement specifically provided that the net proceeds of the sales would be "paid to Cornhusker Bank to reduce the total amount of the debt to the bank." Finally, the agreement provided that the remaining total indebtedness due to the bank after the liquidations, up to a maximum of $125,000.00, would be secured by the home residence and paid to the bank in monthly installments based on a 20-year amortization schedule.

The non-residence real estate owned by Larry Siebe was ultimately sold and Cornhusker Bank applied the net sale proceeds to the other two notes which were not co-signed. Despite that application, the bank was left with deficiencies of more than $24,000.00 on one of the notes and more than $35,000.00 on another note. None of the liquidation proceeds were applied to the note co-signed by Debtors herein. Accordingly, the bank considers the entire note amount to be due and owing. Cornhusker Bank acknowledges that it chose to apply the proceeds from the liquidation of the properties solely to the notes that did not have additional co-signers.

In 2006, Cornhusker Bank commenced a collection lawsuit against Debtors on the co-signed note in the District Court of Lancaster County, Nebraska. Debtors argued that the case should be dismissed for lack of subject matter jurisdiction due to the pending bankruptcy case of Larry Siebe. Debtors further suggested that the bankruptcy plan of Larry Siebe constituted a replacement note that somehow distinguished the original co-signed obligation. The District Court of Lancaster County rejected those arguments. Therefore, Debtors commenced this Chapter 13 proceeding on February 16, 2009.

Cornhusker Bank timely filed its proof of claim for the full balance due under the promissory note at issue. On August 26, 2009, the Chapter 13 Trustee filed her Notice Concerning Claims (Fil. #58) which listed, among other things, the claim of Cornhusker Bank. That notice specifically provided: "Pursuant to 11 U.S.C. § 502(a) and Nebraska Rule of Bankruptcy Procedure 3007(B)(2), the claims which have been filed as recited above are deemed allowed unless objection is made by the debtor(s) or other party in interest." The notice further provided Debtors with a 30-day period to file a timely written objection to any claim which may be improper. Finally, the notice states: "The absence of a written objection will be deemed and [sic] approval by the debtors(s) of the claims as recited above." Debtors' objection to the claim of Cornhusker Bank was filed on September 3, 2009.

*Discussion*

Debtors object to the claim of Cornhusker Bank, raising the doctrines of novation, accord and satisfaction, and laches. Specifically, Debtors believe that the Chapter 11 bankruptcy plan of Larry Siebe constituted a substituted contract or novation of the note and/or an accord and satisfaction of the note. Debtors also assert that Cornhusker Bank delayed pursuing its rights against Debtors for approximately four years, resulting in prejudice, injury, and injustice.

Cornhusker Bank's primary argument is that Debtors' objection was untimely and, therefore, its claim has been deemed allowed. Cornhusker Bank is incorrect. Debtors' objection to Cornhusker Bank's claim was filed on September 3, 2009, which was only eight days after the trustee's notice. Contrary to the bank's assertions, the objection was timely and the claim has not yet been "deemed allowed." Therefore, it is necessary to consider the merits of the objections raised by Debtors.

Debtors' novation and accord and satisfaction objections appear to be based on a misconception with regard to the Bankruptcy Code. Specifically, § 524(e) of the Bankruptcy Code provides in relevant part that discharge of a debt of a debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt. In other words, a discharge of Larry Siebe under his bankruptcy plan does not affect the liability of Debtors, the co-signers on one of Larry Siebe's promissory notes. *See In re A.P.I., Inc.*, 331 B.R. 828 (Bankr. D. Minn. 2005):

> "In a typical Chapter 11 proceeding, the confirmation of the reorganization plan discharges the debtor of any debt that arose prior to the confirmation. 11 U.S.C. § 1141(d)(1). That 'discharge' does not result in the extinguishment of the underlying debt but merely releases the debtor from personal liability." *Star Phoenix Min. Co. v. West Bank One*, 147 F.3d 1145, 1147 n.2 (9th Cir. 1998) (Lay, J., sitting by designation). *See also Matter of Edgeworth*, 993 F.2d 51, 53 (5th Cir. 1993). Though the confirmation of a plan binds all creditors whether they have accepted the plan or not, 11 U.S.C. § 1141(a), "[§] 524(e) acts as a limitation on the effect of this discharge." *Matter of Specialty Equipment Companies, Inc.*, 3 F.3d 1043, 1046 (7th Cir. 1993). Thus, the liability of co-debtors or guarantors of a debtor's debt is not affected by a grant of discharge to that debtor. *Star Phoenix Min. Co. v. West Bank One*, 147 F.3d at 1147 n.2; *Underhill v. Royal*, 769 F.2d 1426, 1432 (9th Cir. 1985). *See also In re Lowenschuss*, 67 F.3d 1394, 1401 (9th Cir. 1995); *Matter of Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995). *Cf. In re Western Real Estate Fund, Inc.*, 922 F.2d 592, 601 (10th Cir. 1990) ("Neither the confirmation of a plan nor the creditor's recovery (of partial satisfaction) thereunder bars litigation against third parties for the remainder of the discharged debt."), *modified sub nom. Abel v. West*, 932 F.2d 898 (10th Cir. 1991).

*Id.* at 867-68.

This Court was presented with no evidence that the Chapter 11 bankruptcy proceeding of Larry Siebe somehow extinguished the liability of the co-signing Debtors or required Cornhusker Bank to apply the proceeds from the property sales in any particular order. Simply put, there is nothing in the bankruptcy plan or in the evidence to indicate that Cornhusker Bank agreed to accept the terms of the bankruptcy plan as a novation of its promissory note, as a release of the obligors, or as an accord and satisfaction of its promissory note. To constitute an accord and satisfaction, there must be a dispute between the parties as to the amount owed, substituted performance tendered in full satisfaction, and acceptance of that substituted performance. *Mackiewicz v J.J. & Assoc.,* 245 Neb. 568, 582-83, 514 N.W.2d 613, 623 (1994). A novation occurs when an existing liability is completely extinguished and a new one substituted in its place. *Kearney State Bank & Trust Co. v. Scheer-Williams,* 229 Neb. 705, 712, 428 N.W. 2d 888, 893 (1988). Here, there is no evidence of a dispute between Debtors and the bank at the time of Larry Siebe's bankruptcy plan. More importantly, Debtors have not tendered *any* substituted performance in full satisfaction of the debt and the bankruptcy plan of Larry Siebe has no bearing on the liability of the co-obligors.

The defense of laches is not favored in Nebraska, and will be sustained only if a litigant has been guilty of inexcusable neglect in enforcing a right to the prejudice of his adversary. *Production Credit Ass'n of the Midlands v. Schmer*, 233 Neb. 749, 757, 448 N.W.2d 123, 128 (1989). Laches does not result from the mere passage of time, but from the fact that during the lapse of time, circumstances changed such that to enforce the claim would work inequitably to the disadvantage or prejudice of another. *Campbell v. Kirby*, 195 Neb. 610, 614, 239 N.W.2d 792, 795 (1976). Debtors' argument seems to be that they could have cured the default or otherwise taken action had Cornhusker Bank notified them earlier of Larry Siebe's default prior to his bankruptcy filing. However, Debtors failed to explain why they never inquired as to the status of the loan. After Larry Siebe filed bankruptcy, Cornhusker Bank engaged in efforts to protect its rights and would not have been in a position to know the amount of any deficiency owing on the underlying promissory note until the plan was confirmed and the collateral liquidated. Thus, Debtors have failed to identify any inexcusable neglect, bad faith, or unreasonable actions by Cornhusker Bank.

For the foregoing reasons, the claim objections raised by Debtors are not persuasive. However, it seems clear that the claim of Cornhusker Bank is overstated. The bank entered into a written agreement in connection with Larry Siebe's bankruptcy specifically providing that the net proceeds of the sales would be "paid to Cornhusker Bank to reduce the total amount of the debt to the bank." Thus, the debt was all combined and the proceeds were to be used to reduce the combined total. At a minimum, a pro-rata portion of the liquidation proceeds should have been applied to reduce the co-signed note since it constituted a pro-rata portion of the total indebtedness. Further, a pro-rata portion of the ongoing house payments made by Larry Siebe are also applicable to the co-signed note.

The record does not provide sufficient information to calculate the proper claim amount so the parties need to try to reach an agreement on that issue. If the parties do not file a stipulation settling the claim objection by December 3, 2009, the clerk will set this matter for trial.

  IT IS, THEREFORE, ORDERED that Debtors' Objection to Claim (Fil. #67) shall be set for trial by the clerk in the event a stipulation is not filed by December 3, 2009.

  DATED: November 13, 2009.

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the Court to:
 *Gene T. Oglesby
 Susan M. Napolitano
 Kathleen Laughlin
 United States Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.